Our next case this morning for oral argument is 23-2905 Socha v. City of Joliet. Good morning Mr. Adams. Good morning. May it please the court, my name is Hall Adams. I represent Officer Cassandra Socha, who it should be noted before anything else is said, was never charged with any offense arising out of this for a once upon a time friend, Gateland. Both the summary judgment on count 1 and count 12 should be reversed. There exists sufficient evidence in this record when viewed in a light most favorable to Officer Socha to submit both of those claims to a jury. On count 12, the specific question is whether Detective McKinney went trawling through the download of Socha's iPhone intentionally or accidentally. To underscore the existence of fact questions with which the record on that issue bristles, I direct the court's attention to statements of uncontested fact during the summary judgment briefing in which defendants said that when Detective Boatswain downloaded the iPhone to the Celebrite computer terminal, he encrypted them. Now, McKinney, when he was deposed, never offered any explanation for what I have to take advantage of as the low-hanging pun in the case, the enigma or the jury question in this case, how it is that he managed to decode the encryption to get to Socha's iPhone. He had to know where to find it on the Celebrite computer, and he had to know how to get into it. I thought the testimony was that there was one code that would decrypt everything. That isn't quite right, Your Honor. There was a common password known to all the detectives, not exactly encryption in the Joliet Police Department. It was Joliet. That's how you got logged on to Celebrite. But Boatswain testified that he had gone to particular lengths to make sure that the only people in the department who could get to the Socha download on the Celebrite computer, once they'd logged on using that common password, they had to know where to go. They had to know how Boatswain had labeled it, and they had to know how to get into the download where Boatswain had labeled it. Thus, the defendant's characterization, it's not my characterization, that they had encrypted it. McKinney never offers any explanation for how he accidentally gets to this specific file, and we describe in some detail in both the opening brief and the reply brief this very important dichotomy between his testimony and Detective McEwen's testimony about what he finds when that demonstrates that he knew well that he was going through the download of Socha's iPhone while he was doing it, and he knew he was looking for images. He knew he was looking for photographs. McKinney has testified himself that he could click on icons that related to emails, he could click on different icons that related to text messages, and he could click on different icons that related to photos or videos, and he was clicking on the photo image icons in her iPhone. Is that enough to get you past summary judgment? Here's the way I interpret that testimony. McKinney says, I was just playing around because I was trying to learn the system, and McEwen says McKinney came upon, I think it was McEwen, McKinney comes upon a picture of a woman's chest and immediately identifies it as Socha without seeing a face or how would he possibly know that that was her phone, right? That's your argument. Correct. But is that, if I take McKinney's testimony and compare it to McEwen's testimony, in that respect, is that enough to get you to a jury for a jury to conclude that McKinney was intentionally looking at her phone? Applying the summary judgment standard, it is enough, but it's not the only fact that a jury could consider in reaching that conclusion. I agree with that. On this record, the much more compelling fact is that McKinney had to know exactly where to go in that terminal to get to the Socha iPhone download. But how do you get there? What's the evidence given that the file itself had a very nondescript name? I know you've argued that works in your favor, but it seems to me that works against you because there's nothing descriptive about it. So McKinney acknowledged when he was deposed that he was assigned a training folder so that if he's going into that computer terminal to train on the Celebrite, what he's supposed to do is go into his training folder and then crawl to his heart's content to develop his skills on the Celebrite system. There's no reason, Your Honor, for McKinney to go to any other file or folder in order to train like he says he was doing. That is a complete fabrication. And there is more than enough evidence here to present that claim to a jury, to let a jury decide whether McKinney's story makes any sense at all. Where count one is concerned, that's the constitutional claim that the district court entered summary judgment on the basis of qualified immunity. Again, there is sufficient evidence in this record to submit to a jury the question of whether Defendant Detective Grizzle knowingly omitted from his warrant application to Will County Judge Sarah Jones the facts that he, Grizzle, only needed to get into Socha's iPhone to confirm that Socha was the sender of one text message that was sent to one person, Gateland, on a specific date at a specific time. Mr. Adams, I'm sorry. Your time is a little limited. Can I take you back about Officer McKinney's search? Yes. He says that there was, when he clicked on the second image, he was asked, why did you click on the next photo? And he said, if I recall it right, it was a small thumbnail and it looked like it had someone's face. Was there any testimony or evidence about what the thumbnail of the chest photo looked like? No. I will say, however, that it speaks volumes about McKinney's intent that after he saw an image of a naked woman's chest, he didn't stop. He kept looking because he knew he was looking in Socha's iPhone. That's another fact, Your Honor. It's weird here to me. I'm very troubled by the testimony in this case because what happened to Ms. Socha is terrible. I can't believe a judge signed this warrant to say, you can search the entire contents of someone's phone to look for one text message, and then McKinney just happens to be searching around in Cellbrite, and I'm very familiar with Cellbrite and how it works and what's in there, happens to be searching around training, and guess what? He happens upon the naked pictures that everybody's talking about in the police department. It's weird. It's troubling, right? It is beyond that, Your Honor. Is there any evidence or testimony that explains why Officer McKinney said, oh, I think this is Socha or this could be Socha after he saw the chest picture? There's no explanation or admission or confession from McKinney, that's for sure. Is there anything that supports why he thought that might have been Socha? At that point, it was widely known in the department, particularly in the detective section, that Socha's iPhone had been seized by detectives and was in the process of being searched. And so inquiring minds in a, frankly, misogynistic and frat house sort of environment knew where to look and what to look for. That is what a jury ought to consider in this case. And where one is concerned, the case law is well established. You are well into your rebuttal if you want to save a little bit. I'll give you a little bit more. Sure. Where an officer knowingly omits material information, he has committed a constitutional violation, and there's evidence in this record that would support a jury conclusion, a reasonable jury conclusion, that a detective with grizzled experience who submitted that warrant application, knowing how discreet the information was he actually needed from that cell phone, committed a constitutional violation and isn't therefore entitled to the benefit of qualified immunity. Thank you, Mr. Adams. Mr. O'Donnell? Good morning. Good morning, Your Honors. My name is Drew O'Donnell, and I represent the city of Joliet. I'm plaintiff's state law intrusion upon seclusion claim. And as plaintiff concedes, the only issue on appeal here is whether or not Detective McKinney committed an unauthorized, intentional intrusion into plaintiff's private images. And as the trial court correctly ruled, plaintiff's claim fails because he doesn't offer any admissible evidence that McKinney intentionally pried into plaintiff's private images. Instead, the evidence showed that McKinney was a relatively new detective. He started in December of 2000. What type of evidence does he need? What does he need? Does he need an admission from somebody that McKinney said, I intentionally looked at these pictures? What does he need to get beyond summary judgment? He would either need direct or circumstantial evidence, and there's no circumstantial evidence here either. There would have to be some testimony that conceives that what McKinney's testimony is, that he was training on the system and inadvertently came across this. He would need some testimony to show that that is not true. What do you make of McKinney's testimony, that McKinney sees? I mean, maybe I'm misreading something, so I'm going to ask the question. McKinney sees a picture of a naked woman's chest and says, oh, this must be Socha. How could you possibly see a woman? I mean, unless McKinney had some relationship with her or she had some distinguishing characteristics, that is weird to me. Yes, Judge, and I'll just back up a little bit before, is that there were only three individuals in the entire department that knew about plaintiff's images on this particular Celebrite system in terms of the unidentified folder. All three of those individuals testified that they never told McKinney. So no one, the people that actually knew about it, they definitively testified that they never told McKinney. So when McKinney accessed this unidentified media folder that in no way named Socha, there's no way he could have known that it was Socha. But it's odd, as Judge Kirsch says, that his response when he sees a naked chest is, in looking in investigative files, that, oh, it must be Officer Socha's, who's a colleague. There has to be some basis for that. Correct, Your Honor, and so the testimony that McKeown said was he actually said that it might be Socha's records. And so at the time, we knew. Regardless, it still identified Socha. It's not whether he said, oh, it is or it might be. It's the fact that he identified Socha, a colleague, as potentially the person depicted in the naked chest photo. Correct, Your Honor, and so it was well known that Socha's now husband was being investigated for discharging a firearm. It also was known within the department that Socha was being investigated because she tried witness tampering with another witness in that criminal trial. That's debatable. That's debatable. It isn't. She wasn't charged with witness tampering. Correct, she wasn't charged with it, but I'm saying that the department knew that she was being investigated. Was there another judge, just as an aside, was there another state court judge that refused to sign this warrant before this particular judge signed it? Judge, I believe that would be a question for my colleague because they dealt with the warrant portion. Mine was related to the intentional intrusion upon seclusion. But again, I think the evidence would have to show something that would dispute McKinney's version of events, that he was a relatively new detective. That is true, that he was training on this system. That is true. I guess with regard to that point, is there any other evidence other than McKinney's say-so that it was regular practice for police officers to train on other investigatory files? There is, Judge, and Detective German testified that he would encourage McKinney to train because he was a relatively new employee. I'm looking at, German also testified that for cases that officers weren't involved in, they wouldn't have a reason to go into it unless they were into those files, unless they were assisting in some way. And so I guess what I find, what I was trying to look for is, you know, you have German's testimony that says, you know, typically an officer wouldn't go into other investigative files unless they had some sort of responsibility for it. And then you have McKinney saying, oh, you know, like I was told, just go through these random files to your heart's content so you can train. That seems to me a little inconsistent. And Judge, what I would say to that is, if Detective McKinney was only training on his specific files that he worked on, he's doing the same thing over and over and over again. That's not training, that's not learning. In order to learn, in order to train the system, he actually needs to access other files in order to train. That might be true, but I think Judge Lee's question is, why doesn't it raise an issue of fact when you have these two different pieces of testimony about the purpose of the training and what you can actually look at? Right, Judge. And there's no testimony that McKinney, or there's no general order, there's no evidence to show that what McKinney was doing was unauthorized. There are general orders. There's nothing in the record to say that McKinney could not have done what he was doing. In fact, the records would show that he should have been doing that because he needed to train on those different files. Training on his own, he's not going to learn anything. Why could somebody who's training get access to this kind of sensitive information in the first place? That's more of a, why doesn't the city have some better lock and key method for something this sensitive? And so, Judge, I did want to bring up this because this is the argument that he must have known because everyone in the department knew this password. I mean, that is not on the record. So there's only 20 actual detectives, investigators, that have access to this room. Of those 20, there are only five officers that were actually trained to use Cellebrite. Those five officers had the password of Joliet. Plaintiff's argument is that everybody in that department had that password, but that's not the testimony. Actually, Detective McEwen, Brad McEwen, who is an investigator, he testified that he didn't know the password, and the reason why he didn't know it is because he wasn't training on it. So the admissible evidence is that the only people that could access that system, that knew the password, and that knew how to run reports were five individuals, and that's the testimony. And my point is more of a policy one, I guess, than legal. If you have something super sensitive about an employee in your department where you have these explicit pictures, why should even those five be able to access it? It seems like there should have been greater protection. That's not necessarily a liability issue for this particular intrusion upon seclusion claim, but it seems to me that the city should have done a better job. And Judge, just briefly on that, the only way to access or to download a plaintiff's images or her text messages, you had to download the entire phone. It was not possible to just download her text messages, and so Celebrite was the system that Joliet used, and so when they downloaded it, it had to go onto Celebrite, and so that's why it was on Celebrite. Okay, thank you, Mr. O'Donnell. I'm sorry, can I? Yeah, of course. Mr. O'Donnell, I'm looking at... You mentioned general orders, so this kind of popped in my mind. I was looking at General Order 10-6, Criminal Investigation Organization and Administration. That's Exhibit O to some sort of... It's, let's see, 253-15. That's the original docket file. It says access to files, investigative files should only be accessible to law enforcement personnel at the discretion of the assigned investigator or an investigation supervisor. Is there any testimony that Mr. McKinney got permission from the assigned investigator or the investigation supervisor to have access to these files? There is not. Thank you. Mr. Atkins. Good morning. Good morning. May it please the Court, my name is Michael Atkins. I'm here today on behalf of Defendant Edward Grizzle to ask the Court to affirm the well-reasoned judgment of the District Court entering summary judgment in his favor on Plaintiff's Fourth Amendment claim on the basis that he was entitled to qualified immunity in his actions in seeking and procuring the search warrant for Plaintiff's cell phone. The crux of Plaintiff's claim, as I understand it, is that Grizzle violated the Fourth Amendment by failing to include in his application for the search warrant words to the effect of, I don't need to search all the contents of the cell phone but only the text messages. Qualified immunity is appropriate in this instance because as the District Court concluded, there was no existing precedent at the time that would have made it clear beyond doubt to all reasonable officers that such parsing out of the types of cell phone data in an application for a search warrant was necessary to avoid running afoul of the Fourth Amendment. But I'm not sure I accept that argument, okay, because that's not different than searching any other place where evidence of a crime can be found. I mean, we don't search apartment buildings looking for drugs in a single apartment, okay? And that is an overbroad search warrant. And here, to me, I think Officer Grizzle has a very good argument under the good faith exception, although it's not called that here in qualified immunity. It's objective reasonableness. He did seek a warrant that a state court judge signed, okay? So he's got that protection of seeking a warrant. And there was a lot of discussion here about whether we should get a warrant. There's probably good conversations, okay, and maybe better judgment would prevail. But I look at this warrant, and they're looking for a text message, okay? A text message, according to the warrant, that describes... Here's what they're looking for. Soka's text message accuses Maria Gatlin of committing crimes when employed as a police officer, ridiculing Maria as a mother and not being able to have children along with having a mixed child. And here's what they're going to search. Any and all data regarding electronic communications, including dates and times of those communications, digital images or videos, email, voicemail, buddy lists, chat logs, instant messaging, forensic data, etc. That strikes me as extraordinarily broad when you're searching for a single text message that, by the way, you already have. I guess to take your last point first, the fact that they already had it, at least from the perspective... I get it. They can go get it through other means. There's no issue with that. But they knew what they were looking for. I don't... I'm not going to stand here and say that it's not a broad warrant. You don't have to, though, is my point. If he says, look, I got the warrant. I presented it to a state court judge. The state court judge signed it. And by the way, I think Officer Grizzle relied upon form language that comes from forensic people that says this is how we download and search computers. And that was going to be my next point, judges. I think, as my friend mentioned, at least the undisputed testimony in this case, and you said you're familiar personally with the Celebrate system. I'm only familiar with it from what I learned in this case, is that in order to take a forensic copy of a device like a cell phone, you cannot parse out text messages when you dump or extract it. That's no problem. Because before these things happened, when the FBI would take a computer and search a computer, they would have probable cause to search within particular places in the computer. And the person whose computer it was may have been maybe without their computer for six months, maybe longer, because they get probable cause to search the Word files, then probable cause to search the email files, then probable cause to search voicemails. I mean, one builds upon another rather than saying we're going to search the whole file. I mean, people's lives are on their cell phones now. And to say there's this one text message that, I mean, I'm not even sure from the description here whether it's harassing, okay? But there's one text message that may be harassing, and as a result, we're going to take everything that you have off your phone, we're going to download it into a police computer database, and then we have this mischief going on with videos and photos that are clearly private, intended to be private, that are being viewed or distributed throughout the police department and talked about in the police department. I mean, boy, this is very troubling from a factual matter, in my view. I guess I would... And it didn't happen in this case, and then maybe hypothetically it might address your concerns, is the way I see it is... In order to maintain the Cellbrite program and forensic extraction of a cell phone as a law enforcement tool, I think at least from the perspective of the attorneys and the judge and the officer who have evolved in this case, seemed like it's necessary to seize all that data. Was that explained in the warrant? It's not there. I think there's a little bit that talks in the warrant about the Cellbrite system and how an officer's experience oftentimes criminal matters... Also, if you need probable cause, that doesn't seem to be a basis for probable cause, that, oh, the system has to have it all. And I guess what I was sort of driving at there is to look at the reasonableness and its totality is at least there's undisputed evidence that my officer's actual search of the extracted data was limited to searching for, in the specific extracted data, about text messages for this single text message, which he found in about an hour. I think the testimony is there's no evidence. The evidence is undisputed that he didn't trawl the phone for anything else. He didn't look at any images or videos of Plaintiff Socha or anyone else. He's not involved in any of the rumors. That's why he's not in that count. He's not involved in any of the rumors. He's not in count 12 because of that. Exactly. Okay, thank you. Thank you all for your time. Thank you. Mr. Adams? You used all your time. We'll give you another minute. I can do this in a minute, I think. The Winn case, on which we rely heavily, I should point out, rejected the good faith exception on facts that were not as egregious in terms of the overbreadth of the warrant in that case. And that analysis pertains here in as much as the fact that Grizzle shouldn't be entitled here to qualified immunity is really the flip side of the good faith exception. The analysis is the same. In answer to Judge Kirsch's question about what evidence do we need, at this stage in a de novo review of summary judgment, the plaintiff gets the benefit not just of the evidence of record but of all reasonable inferences that can be drawn from it. Applying that standard, the summary judgment on count one should most certainly be reversed. What the evidence shows is that McKinney, viewed in that light, knew what he was looking for, knew where to go to find it, did what he did intentionally, and he got caught doing it. Thank you, Mr. Adams. And the one other question I'd answer is there is evidence in the record that this warrant was shot. Judge Jones was not the first judge to win the application list. Okay. Thank you. The court will take the case under advisement.